IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JULIUS ADAMS,

              Plaintiff,

     v.

CITY OF ATLANTIC CITY, et al.,

           Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 13-7133 (JBS/AMD)

**OPINION**

APPEARANCES:

Jennifer Ann Bonjean, Esq.
BONJEAN LAW GROUP PLLC
142 Joralemon Street, Suite 5A
Brooklyn, NY 11201
    Attorney for Plaintiff

Tracy Riley, Esq.
LAW OFFICES OF RILEY & RILEY
100 High Street, Suite 302
Mt. Holly, NJ 08060
    Attorney for Defendants City of Atlantic City, Frank Timek,
    Brent Dooley, Matthew Rogers, Raymond Wagner, Kyle
    Eisenbeis, Daryl Hall, Michael Losasso, Glenn Abrams, and
    James V. Pasquale

James T. Dugan, Esq.
ATLANTIC COUNTY DEPARTMENT OF LAW
1333 Atlantic Avenue, 8th Floor
Atlantic City, NJ 08401
    Attorney for Defendant Atlantic County

James T. Dugan, Esq.
(address above)
  - and -
Matthew J. Behr, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
    Attorneys for Defendants Dana Litke, Detective Michelle
    London, and Joe Pepe

**SIMANDLE, Chief Judge:**

I.    **Introduction**

     Plaintiff Julius Adams brings this lawsuit against the City of Atlantic City, Atlantic County, nine police officers and three Atlantic County Prosecutor's Office employees, for injuries stemming from a police assault. Plaintiff asserts that, after he filed internal affairs complaints with the police department and the Prosecutor's Office about an unwarranted traffic stop, he was subjected to a targeted beating and canine attack by several police officers and two police dogs. Plaintiff also alleges that his internal affairs complaints were not handled properly.

     Before the Court are three motions to dismiss brought by Atlantic County ("the County") [Docket Item 6], Atlantic City ("the City") and Officer Michael Losasso [Docket Item 9], and Defendants Dana Litke, Michelle London and Joe Pepe ("the ACPO Defendants") [Docket Item 17].[1] The latter motion is unopposed.

     Because the County is not a proper defendant to this action, because certain tort claims against Officer Losasso are time-barred, and because Plaintiff fails to state a claim

_____

[1] Defendants Litke, London and Pepe assert that Plaintiff erroneously named them in the Complaint as "Dana Like," "Detective Michelle E. Fromal," and "Lieutenant Pepe." [Docket Item 17 at 2.]

against the ACPO Defendants and does not oppose their motion to dismiss, the Court will dismiss some claims with prejudice, as specified below. All other claims against the moving defendants will be dismissed without prejudice, because the Complaint lacks sufficient factual allegations to state a claim upon which relief may be granted. The Court will grant Plaintiff 14 days to file an Amended Complaint, curing the deficiencies noted in this Opinion.

**II.  Background**

**A. Facts**

The facts are drawn from the Complaint and are accepted as true for the purposes of these motions. On June 17, 2011, an unspecified number of Atlantic City police officers, including Defendants Officer Michael Losasso and Officer Brent Dooley, initiated a traffic stop of Plaintiff Julius Adams, a resident of Egg Harbor Township, N.J. (Compl. ¶¶ 8, 27.) Plaintiff asserts that the stop was "unsupported by probable cause or reasonable suspicion of wrongdoing." (Id.) The police officers "assaulted Plaintiff and falsely charged him with various traffic violations, including but not limited to DUI." (Id. ¶ 28.)

Three months later, Plaintiff filed an internal affairs complaint with the Atlantic County Prosecutor's Office ("ACPO") about the June 17 incident. (Id. ¶ 29.) When the ACPO informed

Plaintiff that it would not pursue the complaint, Plaintiff renewed the complaint with the Internal Affairs Section of the Atlantic City Police Department ("ACPD"). (Id. ¶¶ 30-31.) Plaintiff asserts that the ACPD either took no action or never informed Plaintiff of any actions it took with respect to the complaint. (Id. ¶ 31.)

When Plaintiff appeared in court for the DUI charges and related traffic tickets, stemming from the June 17 incident, a few ACPD officers, including Officer Dooley, "threatened Plaintiff by punching their hand into their other hand, suggesting that they would inflict physical injury on Plaintiff again at a later date." (Id. ¶ 32.)

On February 28, 2012, Plaintiff and two acquaintances were exiting the Trump Plaza Casino in Atlantic City when two police officers stopped them, requested identification, and ordered them against the wall. (Id. ¶¶ 33-35.) One officer, referring to Plaintiff, asked, "Is that him?" to which another officer responded, "Yeah, that's him." (Id. ¶ 37.) Other police cars pulled up to the scene, and the police handcuffed Plaintiff and "began to punch and beat" him. (Id. ¶¶ 37-39.) Officer Frank Timek unleashed a canine from one police car and "ordered it to attack Plaintiff, who was completely subdued and handcuffed." (Id. ¶ 40.) The canine "bit Plaintiff's thigh multiple times, causing deep puncture wounds and extraordinary pain." (Id. ¶

4

41.) Sergeant Daryl Hall ordered a second canine to be unleashed on Plaintiff, and both dogs "continued to maul Plaintiff's leg . . . ." (Id. ¶¶ 42-43.) Sergeant Hall stopped the attack and told the men: "We got your IDs. We know where you live. If you say anything, the same thing will happen to you . . . ." (Id. ¶¶ 44.) Both Sergeant Hall and other officers used language derogatory to African-Americans during the incident. (Id. ¶¶ 35, 44, 45.)

Plaintiff, who was bleeding "profusely," was taken to a hospital by ambulance. (Id. ¶¶ 45-46.) After receiving treatment, Plaintiff was sent to the Atlantic County jail, where he was detained for one week. (Id. ¶ 46.) Plaintiff asserts that his "wounds were severely infected which necessitated surgery and required him to wear wound bags for many weeks," and which have caused "permanent physical injuries and disability." (Id. ¶ 47.)

Plaintiff filed an excessive force complaint with the internal affairs section of the ACPD regarding the February 28 incident. (Id. ¶ 48.) Defendant Commander James V. Pasquale later informed Plaintiff that the officers had been "exonerated" and the charges in the complaint were "not sustained." (Id.)

## B. Procedural history

On November 22, 2013, Plaintiff filed a six-count Complaint against the City of Atlantic City, Atlantic County, nine police

officers and three employees of the ACPO. Count I alleges that
the individual police officers and the ACPO Defendants violated
Plaintiff's First, Fourth, Eighth and Fourteenth Amendment
rights, pursuant to 42 U.S.C. § 1983.

Count II alleges that Atlantic City established several
policies or practices in violation of Plaintiff's First, Fourth,
Eighth, and Fourteenth Amendment rights, including: (a)
preventing formal complaints from being filed against police
officers and failing to conduct proper investigations, (b) using
excessive force without fear of discipline, (c) giving "police
officers with extensive histories of police misconduct vicious
canines for use in their policing," (d) using canines "to stop
and bite individuals who are not resisting arrest or posing a
threat to officers' safety or the public at large," (e) engaging
in racial profiling and effectuating false arrests and bringing
false charges, (f) filing false police reports, fabricating
evidence, destroying evidence, and making false statements, (g)
"exonerating rogue police officers, by refusing to investigate
civilian complaints, and by convincing civilians not to file
formal complaints," and (h) leaking names of citizens who have
filed complaints. (Id. ¶¶ 54-55.) Count II also alleges
inadequate training, supervision, discipline, and hiring by the
City, and vicarious liability for the torts of the police
officers. (Id. ¶¶ 55-56.)

Count III alleges that Atlantic County adopted policies in violation of Plaintiff's federal constitutional rights, related to the ACPO's handling of civilian complaints, protecting citizens from the police, and leaking names of those who filed complaints. (Id. ¶¶ 62-63.) Count III also alleges that the County failed to adequately train and supervise ACPO investigators and that the County is vicariously liable for the ACPO employees. (Id. ¶¶ 64-65.)

Count IV alleges state-law torts of "assault, battery, trespass, trespass to chattel, false arrest, false imprisonment, conspiracy, racial profiling, spoilation, slander, negligent infliction of emotional distress, and intentional infliction of emotional distress," against the individual police officers and ACPO employees. (Id. ¶ 68.) Count VI requests punitive damages for the conduct of the individual Defendants. (Id. ¶ 71.)

Count V alleges a conspiracy to violate civil rights by targeting Plaintiff for "unwarranted violence; subjecting him to malicious prosecution; [and] coordinating false stories and reports against Plaintiff . . . ." (Id. ¶ 70.)

The Complaint does not include any factual allegations against seven of the individual Defendants: Abrahms, Eisenbeis, Rogers, Wagner, Litke, London and Pepe. The City, the County Officer Losasso, and Defendants Litke, London and Pepe filed motions to dismiss. Plaintiff filed late opposition to the first

two motions to dismiss; the latter motion, by the ACPO
Defendants (Litke, London and Pepe), is unopposed.

## III. Standard of review

To survive a motion to dismiss, under Fed. R. Civ. P.
12(b)(6), a "complaint must contain sufficient factual matter,
which if accepted as true, states a facially plausible claim for
relief." Caprio v. Healthcare Revenue Recovery Grp., LLC, 709
F.3d 142, 147 (3d Cir. 2013) (citing Bistrian v. Levi, 696 F.3d
352, 365 (3d Cir. 2012)). A claim has "facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Iqbal v. Ashcroft, 556 U.S. 662, 678
(2009). The court must construe the complaint in the light most
favorable to the plaintiff. Fleisher v. Standard Ins. Co., 679
F.3d 116, 120 (3d Cir. 2012). A motion to dismiss under Rule
12(b)(6) "may be converted to a Rule 56 motion for summary
judgment whenever matters outside of the pleadings are presented
to and considered by the court," provided that the court give
the parties "a reasonable opportunity to present all materials
made pertinent to such a motion by Rule 56." Crown Cent.
Petroleum Corp. v. Waldman, 634 F.2d 127, 129 (3d Cir. 1980);
Fed. R. Civ. P. 12(d).

**IV.  Motion to dismiss by Defendant Atlantic County**

The County moves to dismiss all claims against it on the grounds that a county cannot be held vicariously liable for the law enforcement actions of employees of that county's prosecutor's office, under Wright v. State, 169 N.J. 422 (2001). In Wright, the Supreme Court of New Jersey held that

> when county prosecutors and their subordinates act in their law enforcement/investigatory capacity, they act as "agents" and "officers" of the State, qualifying as State employees under N.J.S.A. 59:1-3 for the purpose of determining vicarious liability under the TCA [Tort Claims Act, N.J.S.A. §§ 59:1-1 to 12-3]. When their conduct in that context is actionable, the State should be made "to respond in damages" based "on general principles of [r]espondeat superior." McAndrew[ v. Mularchuk], 33 N.J. at 193 [1960].

Wright, 169 N.J. at 452. The County reasons that, here, the ACPO and its employees were acting in a law enforcement capacity when they investigated Plaintiff's internal affairs complaint, and therefore all claims against the County should be dismissed. (County Mot. [Docket Item 6] at 4.) The County also argues that the factual allegations in the Complaint do not meet the Iqbal-Twombly plausibility standard. (Id. at 5.)

Plaintiff concedes that ACPO employees "were acting in their law enforcement/investigatory capacity when they carried out a policy and practice of failing to conduct meaningful investigations of civilian complaints against Atlantic City Police officers . . . and when they failed to supervise and/or

discipline said police officers." (Pl. Opp'n [Docket Item 18] at
1-2.) However, Plaintiff contends that his claim against the
County is that the "the Atlantic County Prosecutor's Office,
Investigative Unit has adopted an official policy or custom . .
. of failing to investigate citizen complaints of police abuse
and failing to supervise or discipline officers against whom
legitimate complaints of misconduct have been lodged." (Id. at
2.) Plaintiff argues that the County can be held liable for
policies or practices at the ACPO. (Id.)

In reply, the County argues that it "is not the policymaker
with regard to law enforcement functions of the Prosecutor's
Office." (County Reply [Docket Item 21] at 2.) The County
contends that the New Jersey Attorney General "is charged with
supervising County Prosecutors in all law enforcement matters,"
and if the ACPO "had a policy of failing to investigate
complaints, the municipality of Atlantic County would have no
discretion to interfere with those decisions." (Id.)

The Court agrees that, to the extent Plaintiff brings
vicarious liability claims against the County ("Atlantic County
is liable for actions of County defendants under . . . vicarious
liability . . . ," Compl. ¶ 65), those claims are barred by
Wright, 169 N.J. at 452. Plaintiff concedes that the employees
were acting in a law enforcement or investigatory capacity at
all relevant times, and, therefore, under New Jersey law, the

10

employees were acting as agents of the state. Id.; see also
Cashen v. Spann, 66 N.J. 541, 552 (1975) (regarding "defendant
officials as State agents where the alleged tortious conduct
arose out of the investigation of criminal activity"). Claims
against the County for vicarious liability are dismissed with
prejudice.

The Court also agrees that the County is not responsible
for, or capable of enacting, policies relating to law
enforcement activities at the ACPO. As one court in this
District has stated: "New Jersey law forecloses Ocean [County]
from exercising any authority over OCPO [the Ocean County
Prosecutor's Office] with respect to law enforcement functions."
Landi v. Borough of Seaside Park, No. 07-5319, 2009 WL 606141,
at *5 (D.N.J. Mar. 9, 2009). The ACPO is a constitutionally
established office, with county prosecutors nominated and
appointed by the Governor. N.J. CONST. art. VII, § 2 ¶ 1; Wright,
169 N.J. at 437 (quoting Coleman v. Kaye, 87 F.3d 1491, 1500 (3d
Cir. 1996)). The New Jersey Attorney General is responsible for
supervising the ACPO's law enforcement activities, and, by
statute, may supersede the county prosecutor for the purpose of
prosecuting all criminal business of the state in that county.
Wright, 169 N.J. at 438; see also N.J.S.A. §§ 52:17B-103 to
52:17B-110 (delineating the duties and powers of the Attorney
General and county prosecutors). "[T]he county prosecutor's law

11

enforcement function is unsupervised by county government or any other agency of local government . . . ." Wright, 169 N.J. at 452; see also Yurick v. State, 184 N.J. 70, 80 (2005) (quoting Wright); Kamienski v. Attorney Gen. for N.J., No. 11-3056, 2012 WL 4033765, at *4 (D.N.J. Sept. 12, 2012) ("the county prosecutor's office . . . is under the supervision of the New Jersey Attorney General, and not the county").

Plaintiff concedes that the ACPO employees were acting in a "law enforcement/investigatory capacity when they carried out [the] policy and practice" at issue here. It follows that the alleged policy itself -- concerning investigations of civilian complaints against police officers -- relates to the "law enforcement/investigatory" duties of the ACPO. Indeed, the alleged policy or practice does not relate to the kinds of administrative duties at the prosecutor's office for which counties may be held liable. See Yurick, 184 N.J. at 80 ("the county exercises considerable control over the fiscal operations of the county prosecutor's office"); Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009) (suggesting that "administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like" could be functions of a prosecutor's office for which a county is responsible). The state, via the Attorney General, is responsible for the law enforcement policies at the ACPO, and

12

therefore, the County is not a proper defendant to claims related to policies concerning the investigation of citizen complaints. Plaintiff's claim against the County for alleged illegal policy or practice will be dismissed with prejudice.

Courts likewise have held that "training and supervisory activities are prosecutorial functions," and therefore the responsibility of the state, not the county. Pitman v. Ottehberg, No. 10-2538, 2011 WL 6935274, at *6 (D.N.J. Dec. 30, 2011) (citing Van de Kamp, 555 U.S. at 344, among other unpublished district court and New Jersey Appellate Division opinions dismissing claims against counties for failing to train or supervise police officers). Plaintiff's claims against the County premised on a policy related to the supervision of police officers, or the failure to train and supervise police officers, are dismissed with prejudice.

Therefore, Count III will be dismissed in its entirety against the County, and the County will be terminated as a party.

**V.   Motion to dismiss by Defendant City of Atlantic City and Officer Losasso**

**A.  Officer Losasso**

Defendant Officer Losasso moves to dismiss claims against him on the grounds that they are barred by the statute of limitations. (City Mot. [Docket Item 9-2] at 3.) Officer Losasso

13

contends that New Jersey's two-year, personal injury statute of limitations applies to this § 1983 action, and the Complaint was filed more than two years after the June 17 traffic stop. (<u>Id.</u> at 4); <u>Dique v. N.J. State Police</u>, 603 F.3d 181, 185 (3d Cir. 2010) ("A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims."); <u>see also</u> N.J.S.A. § 2A:14-2 (setting a two-year limitations period for personal injury actions). Losasso argues that the Complaint does not allege that he participated in the February 28 incident, and he attaches a police report, which he asserts confirms that he was not present on February 28. (<u>Id.</u> at 4; <u>id.</u> Ex. A.) In fact, he asserts in a certification that he was not on duty and not present at the scene on February 28, 2012. (City Reply [Docket Item 16] at 2-3; Certification of Michael Losasso [Docket Item 16-1] ¶¶ 6-8.)

Plaintiff correctly points out that Officer Losasso relies on matters outside of the pleadings, which cannot be considered on a Rule 12(b)(6) motion.[2] Plaintiff further argues that the

---

[2] Officer Losasso argues unpersuasively that the police report is "a document integral to Plaintiff's complaint, and therefore, the Court is certainly permitted to consider it." (City Reply at 2.) Simply because the report discusses the events that form the basis of the Complaint does not make the report itself integral to the Complaint. The Complaint neither refers to, nor depends on, the contents of the police report, and therefore the report may not be considered on a motion to dismiss.

claims against Officer Losasso include "retaliation and conspiracy to commit civil rights violations," which did not accrue until he suffered the retaliatory action on February 28, 2012. (Pl. Opp'n [Docket Item 13] at 3-4.) Therefore, Plaintiff contends that his claims are timely against Losasso.

Officer Losasso replies that "it is not alleged, nor is it reasonable to suggest, that on June 17, 2011, Michael Losasso conspired with other officers that a violation of Plaintiff's Civil Rights would take place on February 28, 2012." (City Reply at 3.) He continues: "There are no allegations of when, where, or what parties 'conspired' to violate Plaintiff's civil rights as a result of the June 17, 2011 arrest." (Id.) Losasso suggests that Plaintiff did not properly plead a claim of "retaliation" in the Complaint and did not raise the prospect of a retaliation claim "until his current submission," meaning his opposition to the City's motion. (Id.)

Plaintiff's claim of retaliation apparently derives from Count I, which alleges that the individual defendants "deprived Plaintiff of his rights guaranteed to him under the First, Fourth, Eighth, and Fourteenth Amendments . . . , including . . . freedom from retaliation, including but not limited to unlawful arrest and physical abuse, for exercising the right to oppose or challenge police action . . . ." (Compl. ¶ 49(g).) However, the Court agrees that Plaintiff fails to plead

15

sufficient facts to state a claim of retaliation or conspiracy against Officer Losasso. Plaintiff argues that the question "Is that him?" on February 28 provides a reasonable basis to infer "that Defendant Losasso, the arresting office[r] in the original traffic stop and one of the subjects of Plaintiff's internal affairs complaint, was individually involved in the retaliatory actions that occurred on February 28, 2012 and conspired with other officers to commit the retaliatory acts . . . ." (Pl. Opp'n at 4-5.) The Court disagrees that such an inference reasonably may be drawn.

The Complaint makes two factual allegations against Officer Losasso: (1) that he and others initiated a traffic stop of Plaintiff on June 17, 2011, and (2) that he and others "physically assaulted Plaintiff and falsely charged him with various traffic violations" on that date. (Compl. ¶¶ 27-28.) The only other references to Officer Losasso in the Complaint are in the caption of each relevant count, an identification paragraph under the "Parties" heading, and several bare assertions that the City's practice or customs pertain to Losasso and other individual police officers (see, e.g., Compl. ¶ 55 ("Atlantic City and Atlantic City Police Department have a permanent and well-settled practice or custom of allowing police officers (including LoSasso, Timek, Dooley . . . ) to employ excessive force . . .")). There are no factual allegations tying Losasso

16

to any conspiracy or to the alleged retaliation on February 28.
Based on the Complaint as filed, it is possible that Losasso was
somehow involved in a scheme to retaliate against Plaintiff, but
Plaintiff fails to state a plausible claim for relief. Because
the Complaint does not contain sufficient factual content from
which a factfinder reasonably may infer that Officer Losasso is
liable for the misconduct alleged, Plaintiff does not meet the
pleading standard articulated in Iqbal, 556 U.S. at 678-79. The
claims against Officer Losasso will be dismissed without
prejudice, subject to the exception discussed below, and the
Court will grant Plaintiff leave to file an Amended Complaint
within 14 days of the date of this Opinion and Order, to add
factual allegations to support his claims, curing this
deficiency if he can do so.

However, personal injury tort claims against Officer
Losasso arising solely from the June 17 traffic stop are
dismissed with prejudice. Any personal injury claims arising
solely from the incidents on June 17, 2011, are time-barred on
their face, because the Complaint was filed on November 22,
2013, more than two years after the incident. See N.J.S.A. §
2A:14-2 (two-year statute of limitations). Because the Complaint
contains no factual allegations against Officer Losasso after
June 17, 2011, the Complaint lacks a well-pleaded claim for
conspiracy or retaliation. The Court declines to convert the

17

City's motion into a motion for summary judgment under Rule
12(d), because although there is no claim to be barred by a
statute of limitations at present, the specter of such a claim
through amendment remains viable.

### B.   City of Atlantic City

The City moves for dismissal on the grounds that the
Complaint lacks sufficient factual allegations to sustain any
claim for municipal liability under 42 U.S.C. § 1983. (City Mot.
at 5.) The City correctly states that municipalities may not be
held liable under § 1983 on a theory of vicarious liability, but
may be held liable if (1) a municipal employee acted pursuant to
a formal government policy, (2) the employee has policy-making
authority and his or her behavior therefore was an act of
official government policy, or (3) an employee with policy-
making authority ratified the unconstitutional behavior of a
subordinate. (Id., citing McGreevy v. Stroup, 413 F.3d 359, 367
(3d Cir. 2005).) The City argues that "the Complaint is
completely void of any factual allegations which would support"
the alleged policies, and, accordingly, "no reasonable fact-
finder could infer that the City has established the alleged
policies, or that the alleged polices [sic] even exist." (City
Mot. at 6.) The City requests dismissal.

In opposition, Plaintiff asserts that he "has alleged quite
specifically his theory of Monell liability in paragraphs 51

18

through 58 of his complaint." (Pl. Opp'n at 5, referencing
Monell v. Dep't of Social Servs. of City of New York, 436 U.S.
658 (1978).) Paragraphs 51 through 58 of the Complaint allege
the existence of specific policies or practices, but the
paragraphs are nothing more than bare assertions or conclusory
statements, unsupported by any factual allegations. As such, the
claims must be dismissed. See McTernan v. City of York, 564 F.3d
636, 658 (3d Cir. 2009) (stating that Fed. R. Civ. P. 8(a)(2)
"requires a 'showing' rather than a blanket assertion, of
entitlement to relief' that rises 'above the speculative
level'") (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224,
231-32 (3d Cir. 2009)); Iqbal, 556 U.S. at 681 (requiring
factual pleadings, not mere legal conclusions); see also Catlett
v. N.J. State Police, No. 12-153, 2013 WL 6095824, at *3 (D.N.J.
Nov. 19, 2013) (denying reconsideration of dismissal because the
plaintiff "merely presents the legal conclusion that a policy or
custom exists without pleading the facts that support such a
conclusion"); cf. Lapella v. City of Atl. City, No. 10-2454,
2012 WL 2952411, at *8 (D.N.J. July 18, 2012) ("Count IV is not
sufficiently pled as to support municipal liability under §
1983, as it does not plead sufficient facts to support the
otherwise conclusory allegation that the city acted with
deliberate indifference."). Dismissal will be without prejudice,

19

and Plaintiff will have 14 days in which to file an Amended
Complaint, curing these deficiencies noted in this Opinion.

Plaintiff urges the Court to "take judicial notice of the
recent opinion issued by Magistrate Joel Schneider" in Groark v.
Timek, --- F. Supp. 2d ---, No. 12-1984, 2013 WL 6199187 (D.N.J.
Nov. 27, 2013). (Pl. Opp'n at 5-6.) According to Plaintiff, the
opinion in Groark "noted" that Officer Timek and his colleague
had 78 excessive force or assault complaints made against them,
and, since 2003, no Atlantic City police officers have been
disciplined for excessive use of force. (Id. at 6.) Plaintiff
concludes that "Judge Schneider's opinion in conjunction with
the specific allegations against the City . . . militate
strongly against granting Defendant City of Atlantic City's
motion to dismiss." (Id.)

The Court declines to take judicial notice of the
statistics in the Groark opinion, in which Judge Schneider
granted the plaintiff's motion to compel discovery of internal
affairs files for Officer Timek and his colleague. Groark, 2013
WL 6199187, at *1. Judicial notice is governed by Fed. R. Evid.
201, which permits the Court to notice an adjudicative fact
"that is not subject to reasonable dispute because it: (1) is
generally known within the trial court's territorial
jurisdiction; or (2) can be accurately and readily determined
from sources whose accuracy cannot reasonably be questioned."

20

Fed. R. Evid. 201(a)-(b). The information Plaintiff urges this court to notice is not of the kind contemplated by the judicial notice doctrine,[3] because such statistics are data which are themselves matters of continuing litigation and not yet established. But if such factual allegations may formulate good grounds for alleging a policy of indifference to complaints of police office abuse and excessive force, they should appear in the Complaint.

The Court will dismiss Plaintiff's claims against the City without prejudice, and grant Plaintiff leave to amend. Because Plaintiff will have a chance to file an Amended Complaint, the Court need not notice Judge Schneider's summary of statistics compiled from Atlantic City's Internal Affairs Index Cards. See Groark, 2013 WL 6199187, at *1 n.1. Factual contentions on which Plaintiff intends to rely and for which Plaintiff has evidentiary support, or for which he likely will have evidentiary support after a reasonable opportunity for

---

[3] Moreover, the Groark opinion itself notes that "case law is far from clear that plaintiff can merely rely on statistical information to prove his Monell claim." Groark, 2013 WL 6199187, at *16. Even if the Court were to take notice of the statistics in the Groark opinion, that information would not sustain all of Plaintiff's alleged illegal policies, if any, namely "giving police officers with extensive histories of police misconduct vicious canines" or "using vicious canines to stop and bite individuals who are not resisting arrest" or "engag[ing] in racial profiling." (Compl. ¶¶ 54(c)-(d), 55(c).)

investigation or discovery, should be included in Plaintiff's
Amended Complaint.

## VI.  Unopposed motion to dismiss by Defendants Litke, London and Pepe

Three employees of the Atlantic County Prosecutor's Office
("ACPO"), Defendants Litke, London and Pepe, seek dismissal of
(1) federal civil rights claims against them in their official
capacities because they are entitled to Eleventh Amendment
sovereign immunity and are not "persons" within the meaning of §
1983, (2) federal civil rights claims against them in their
individual capacities because the claims are insufficiently
pleaded, (3) state-law tort claims because the claims are
insufficiently pleaded and Plaintiff did not provide notice
under the New Jersey Tort Claims Act, N.J.S.A. § 59:8-8, and (4)
conspiracy claims because the claims are insufficiently pleaded.
(See Defs. Mot. [Docket Item 17-4] at 1-2.) The motion is
unopposed.

### A. Eleventh Amendment immunity for official capacity claims

A suit against a public official "'in his or her official
capacity is not a suit against the official but rather is a suit
against the official's office . . . .'" Printz v. United States,
521 U.S. 898, 930-31 (1997) (quoting Will v. Mich. Dep't of
State Police, 491 U.S. 58, 71 (1989)). Therefore, claims against

the ACPO Defendants are effectively claims against the ACPO itself.

The ACPO Defendants argue that Eleventh Amendment sovereign immunity extends to state agencies, when the state agency is acting as an arm of the state.[4] (Defs. Mot. at 9.) Here, as discussed <u>supra</u>, Part IV, Plaintiff conceded that the alleged offending conduct was made in a law enforcement or investigatory capacity, and, therefore, under New Jersey law, the Defendants were acting as agents of the state. <u>See</u> <u>Wright</u>, 169 N.J. at 452. Defendants cite several cases holding that, in New Jersey, county prosecutor's offices are immune from suits arising out of their law enforcement functions, because the real party in interest is the state. (Defs. Mot. at 10-11.)

Indeed, "Courts within the Third Circuit have consistently held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey." <u>Duncan v. Office of Passaic Cnty. Prosecutor</u>, No. 05-

---

[4] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. CONST. amend XI. The "amendment has been interpreted to make states generally immune from suit by private parties in federal court." <u>MCI Telecomm. Corp. v. Bell Atl. Pa.</u>, 271 F.3d 491, 503 (3d Cir. 2001).

1931, 2012 WL 1079471, at *2 (D.N.J. Mar. 30, 2012); <u>see also</u>
<u>Beightler v. Office of Essex Cnty. Prosecutor</u>, 342 F. App'x 829,
832 (3d Cir. 2009) (holding that the Essex County Prosecutor's
Office "was acting as an arm of the state and entitled to
immunity under the Eleventh Amendment" when its prosecutors were
performing law enforcing and investigative functions); <u>Banda v.</u>
<u>Burlington Cnty.</u>, 263 F. App'x 182, 183 (3d Cir. 2008)
(affirming dismissal of damages claims against individual
prosecutors in their official capacities on Eleventh Amendment
grounds), <u>cert.</u> <u>denied</u>, 555 U.S. 896 (2008); <u>Wright v. Middlesex</u>
<u>Cnty. Prosecutor's Office</u>, No. 10-1351, 2012 WL 1900646, at *4
(D.N.J. May 24, 2012) (dismissing claims against the Middlesex
County Prosecutor's Office on Eleventh Amendment grounds); <u>Davis</u>
<u>v. Twp. of Lakewood</u>, No. 03-1025, 2005 WL 1863665, at *5 (D.N.J.
Aug. 4, 2005) (holding that "the County is immune from suit
under the Eleventh Amendment because the State is the real
party-in-interest").

The Court must determine whether the ACPO is acting as an
"arm of the state." <u>See</u> <u>Chisolm v. McManimon</u>, 275 F.3d 315, 323
(3d Cir. 2001) (describing the factors of the analysis as "(1)
whether payment of a judgment resulting from the suit would come
from the state treasury, (2) the status of the entity under
state law, and (3) the entity's degree of autonomy," citing
<u>Fitchik v. N.J. Transit Rail Operations, Inc.</u>, 873 F.2d 655, 659

24

(3d Cir. 1989)). Here, as previously discussed, the ACPO is a hybrid entity that acts on behalf of, and under the supervision of, the state when its prosecutors act in a law enforcement or investigatory capacity. Plaintiff concedes that the ACPO Defendants were acting in a law enforcement or investigatory capacity. Defendants further represent, without objection by Plaintiff, that the "State of New Jersey has agreed to defend and indemnify these moving Defendants since they are employees of the Atlantic County Prosecutor's Office." (Defs. Mot. at 12.) All factors favor holding that the ACPO was acting as an arm of the state, and therefore, without any indication that the state waived immunity in this case, the Court will dismiss with prejudice all claims against the ACPO Defendants in their official capacities.

**B. Individual capacity claims**

Defendants argue that Plaintiff has pleaded no facts about the ACPO Defendants, and the claims should be dismissed. (Defs. Mot. at 15.) "Defendants will not even raise the defense of Qualified Immunity since Plaintiff has failed to state a claim upon which relief can be granted . . . ." (Id.)

Plaintiff makes no factual allegations against any of the ACPO Defendants and fails to offer opposition to this motion or to suggest the possibility of an amendment to add grounds for individual capacity claims against the ACPO Defendants. Under

these circumstances, the Court will not presume that such grounds may exist, and the dismissal of these claims will be with prejudice, which is what the motion seeks.

### C.  New Jersey Tort Claims Act

Defendants argue that Plaintiff failed to present the ACPO with a notice of claim as required by the New Jersey Tort Claims Act ("TCA"), N.S.J.A. §§ 59:8-3 et seq. (Defs. Mot. at 15-17.) The TCA bars claims against a public employee if the claimant fails to present a public entity with a notice of claim within 90 days after the cause of action accrues. N.J.S.A. § 59:8-8. Because Defendants have alleged that "Plaintiff did not file any tort claims notice," and because Plaintiff offers no argument in response, the Court will dismiss with prejudice all state-law tort claims against the ACPO Defendants.

### D.  Conspiracy claim

Defendants accurately observe that Plaintiff has pleaded "zero facts" in support of his conspiracy claim against the ACPO Defendants. Therefore, the Court will dismiss Count V against the ACPO Defendants with prejudice. As above with regard to dismissal of individual capacity claims, Plaintiff does not oppose this motion and does not suggest that he would present a plausible factual basis for a conspiracy claim against any or all of the ACPO Defendants if given leave to amend.

26

## VII. Conclusion

The Court will grant the three motions to dismiss in part with prejudice and in part without prejudice. The following claims are dismissed with prejudice: Count III; all state-law personal injury tort claims in Count IV against Officer Losasso arising solely from the traffic stop on June 17, 2011; and all claims against the ACPO Defendants. All other claims against the moving Defendants are dismissed without prejudice, and Plaintiff may file an Amended Complaint curing the deficiencies noted in this Opinion within 14 days of today's date. An accompanying Order will be entered.

__May 20, 2014__                           __s/ Jerome B. Simandle__
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge

27